# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRENDA RODRIGUEZ, | § | Case No. 5:16-cv-01213 |
| | § | |
| Plaintiff, | § | **COMPLAINT FOR DAMAGES** |
| | § | **UNDER THE FAIR DEBT** |
| v. | § | **COLLECTION PRACTICES ACT,** |
| | § | **THE TELEPHONE CONSUMER** |
| UNITED COLLECTION | § | **PROTECTION ACT AND OTHER** |
| BUREAU, INC., | § | **EQUITABLE RELIEF** |
| | § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |
| | § | |

## PARTIES

1.  Plaintiff, Brenda Rodriguez ("Brenda"), is a natural person who resided in San Antonio, Texas, at all times relevant to this action.

2.  Defendant, United Collection Bureau, Inc. ("UCB"), is an Ohio corporation that maintained its principal place of business in Toledo, Ohio, at all times relevant to this action.

## JURISDICTION AND VENUE

3.  Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.  Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## **STATEMENT OF FACTS**

5. Before Defendant began contacting Plaintiff, it and Plaintiff had no prior business relationship and Plaintiff had never provided express consent to Defendant to be contacted on his/her cellular telephone.

6. Defendant regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of Defendant's revenue is debt collection.

8. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, Defendant contacted Plaintiff to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. In or around August of 2016, UCB began calling Brenda on her cellular telephone ending in -1432 in connection with the collection of a debt allegedly owed by someone other than Brenda.

13. Shortly after UCB's calls began, Brenda advised UCB that she was not the person with whom UCB was looking to speak and that UCB had called the wrong number.

14. Brenda communicated her desire that UCB cease calling Brenda's cellular telephone ending in -1432.

15. Notwithstanding this communication, UCB continued to call Brenda's cellular telephone ending in -1432 in connection with the collection of a debt allegedly owed by someone other than Brenda.

16.  Defendant's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Plaintiff.

17.  Defendant unreasonably relied upon inaccurate information provided to Defendant by one (1) or more original creditors for whom Defendant was attempting to collect a debt when Defendant called Plaintiff's cellular telephone.

18.  Defendant's policies and procedures violate the FDCPA.

19.  Defendant's collection efforts, including but not limited to its telephone calls, caused Plaintiff emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

20.  Defendant's collection efforts also intruded upon Plaintiff's privacy.

21.  In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls at that telephone number while Defendant was calling her.

22.  Defendant's telephone calls also forced Plaintiff to lose time by having to tend to Defendant's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

23.  Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 22 above as if fully set forth herein.

24.  In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector.  *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir.

2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

25. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

26. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

27. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

28. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 22 above as if fully set forth herein.

29. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee.  If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354

(N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

30. Defendant's policies and procedures, as described in Paragraphs 16 through 17, *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

31. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

32. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

33. Defendant violated 15 U.S.C. § 1692d(5) by causing Plaintiff's telephone to ring or engaging Plaintiff in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Plaintiff.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

34. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 22 above as if fully set forth herein.

35. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Telephone Consumer Protection Act

36. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 22 above as if fully set forth herein.

37.   Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

38.   The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

39.   "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

40.   A predictive dialer is an ATDS within the meaning of the TCPA.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

41.  Defendant used a predictive dialer to place calls to Plaintiff on her cellular telephone.

42.  Defendant used an automated or pre-recorded voice to place calls to Plaintiff on her cellular telephone.

43.  The TCPA provides, in part:

> (b)      RESTRICTIONS   ON   THE   USE   OF   AUTOMATED   TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

44.  The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

45.  Any consent that may have been previously given as to a called telephone number lapses when that number is reassigned.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012); *Sterling v. Mercantile Adjustment Bureau, LLC*, 2014 WL 1224604, *3 (W.D.N.Y. Nov. 22, 2013).

46. A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999-8000, ¶ 72 (2015).

47. Plaintiff was the "called party" in each telephone call Defendant placed to Plaintiff's cellular telephone.

48. Defendant violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Plaintiff on her cellular telephone without Plaintiff's prior express consent or after such consent had been revoked.

49. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

50. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

51. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

52. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA.  *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

53. Defendant voluntarily placed telephone calls to Plaintiff's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

54. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called.  *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

55. Defendant failed to adequately place intermittent live verification calls to Plaintiff's cellular telephone number to ensure that Plaintiff had provided his/her express consent to Defendant to call those telephone numbers.

56. Defendant's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## JURY DEMAND

57. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

58. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

c.   Judgment against Defendant for statutory damages pursuant to 47 U.S.C.

§ 227(b)(3) for each and every call Defendant made in violation of the TCPA.

d.   For such other legal and/or equitable relief as the Court deems appropriate.


RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC LPA


Date: November 29, 2016          By:____/s/ Jeffrey S. Hyslip_____
                                 Jeffrey S. Hyslip, Esq.
                                 Ohio Bar No. 0079315
                                 1100 W. Cermak Rd., Suite B410
                                 Chicago, IL  60608
                                 Phone: 312-380-6110
                                 Fax: 312-361-3509
                                 Email: jeffrey@lifetimedebtsolutions.com
                                 One of Plaintiff's Attorneys